UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60539-SMITH/VALLE

MONICA ALEJANDRO TREJO,

    Plaintiff,

v.

KILOLO KAJAKAZI,[1] Commissioner of
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 15) (the "Motions"). United States District Judge Rodney Smith has referred the Motions to the undersigned for a Report and Recommendation. *See* (ECF No. 2).

Accordingly, after due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 16) and Plaintiff's Reply (ECF No. 20), and being otherwise duly advised in the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the Administrative Law Judge's Decision ("ALJ's Decision") be **REVERSED AND REMANDED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed as Acting Commissioner of Social Security. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

## I.  PROCEDURAL HISTORY

This suit involves Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. § 401 *et seq*. (the "Act").[2] (R. 190-93, 194-99).[3] Plaintiff alleged a disability onset date of November 1, 2015. (R. 190, 194). Plaintiff's claims were denied initially and again upon reconsideration. (R. 125-32, 141-53). Thereafter, Plaintiff requested a hearing, (R. 154-58), which was held before Administrative Law Judge ("ALJ") Denise Pasvantis on March 19, 2019. (R. 36-62, 160-86). Plaintiff, appearing with counsel, and a Vocational Expert ("VE") testified at the hearing. (R. 38-60). On April 24, 2019, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act. (R. 18, 30).

Plaintiff appealed the ALJ's Decision. (R. 12-13). Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-5); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.  STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C.

---

[2] Plaintiff filed her application on January 10, 2017. (R. 190, 194).

[3] All references are to the record of the administrative proceeding filed as part of Defendant's Answer. *See* (ECF No. 11).

§ 405(g). Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154; *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.*

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423 (standard for DIB) and 1382 (standard for SSI). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific

>>impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
>(4)	Is the person unable to perform his or her former occupation?
>(5)	Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted). The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely,

if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404, subpart P, appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III. THE RECORD

#### A. Plaintiff's Testimony and Relevant Background

Plaintiff, born on May 26, 1962, was 56 years old at the time of the administrative hearing. (R. 39, 190, 194). Plaintiff is unmarried, with two adult children. (R. 40). She lives alone in a townhouse. (R. 40). Plaintiff has a high school education and past relevant full-time work as an administrative assistant, operations manager, cosmetologist, production assistant, and nail technician. (R. 39, 55-58). Plaintiff last worked as an administrative assistant and nail technician. (R. 51, 55-56, 236). Plaintiff eventually lost her job because she "was getting sick." (R. 51). Plaintiff has not worked since her alleged onset date. *Id.*

At the hearing, Plaintiff testified that she was unable to work due to headaches, dizziness, and shakes from stress. (R. 41-42). According to Plaintiff, she would start getting dizzy, feel like she would faint, and would sometimes break out in hives. (R. 49-50, 51, 52). Plaintiff suffers from a progesterone deficiency since birth. (R. 43). Her medications include Effexor (antidepressant), Spironolactone (for water retention), Valacyclovir (anti-viral), Premarin and medroxyprogesterone (hormone replacement), Ibuprofen (for headaches), Nasacort (for allergies), CitraNadal (multivitamin), and Xanax (for anxiety), all without side effects. (R. 43-45).

In terms of activities of daily living, Plaintiff testified that she is able to dress and bathe herself, unless it is a day when she wants to do nothing and stay in bed. (R. 46-47). Plaintiff is

able to make a sandwich and use the microwave, but does not do household chores. (R. 47). Plaintiff has a friend who does the housework. *Id.* On days when she feels better, Plaintiff takes an Uber to the grocery store at night. *Id.* Plaintiff does not watch TV, go to church, travel, or go out to the dinner or the movies, but uses her smart phone and knows how to write a check or money order. (R. 48-49). Plaintiff further testified that her symptoms fluctuate and she "never know[s] when [she's] going to be okay or not." (R. 49). Plaintiff explained that she gets "sick from one moment to the next." (R. 52).

### B.   Vocational Expert's Testimony

A Vocational Expert testified at the hearing and categorized Plaintiff's past relevant work as an administrative assistant (sedentary, skilled, with an SVP of 7); cleaner (light but performed at medium level, unskilled, with an SVP of 2); operations manager (light but performed at medium level, skilled, with an SVP of 6); cosmetologist (light, skilled, with an SVP of 6); production assistant (light, skilled, with an SVP of 5); and nail technician (sedentary, semi-skilled, with an SVP of 3).[4] (R. 54-55).

The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and previous work experience, who could perform a full range of work at all exertional levels but who could: (i) only concentrate and persist for simple instructions; (ii) only adapt to gradual changes in the work setting; and (iii) not engage in fast-pace high production demands, could perform Plaintiff's past relevant work. (R. 58). The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform other work that exists in significant numbers in

---

[4] The VE also identified past work as a stage technician and cleaner. (R. 55-56). However, because these were only part-time jobs, the ALJ directed the VE not to consider them in determining Plaintiff's past relevant work. (R. 58).

6

the national economy, including laundry worker, packer, patient transporter, all medium, unskilled work with an SVP of 2. (R. 58-59).

The ALJ then posed another hypothetical to the VE, further limiting the individual's ability to concentrate and persist to only two-hour segments. (R. 59). The VE testified that such an individual would be precluded from any job in the national economy. *Id.* Lastly, in response to questioning from Plaintiff's counsel, the VE testified that if the hypothetical individual needed to be absent from work four or more times per month, then that individual would be precluded from all work.[5] (R. 59-60).

### C. Summary of Relevant Medical Records[6]

*Dr. Ethan Kass (Feb. 2016 – Feb. 2019)*

Between February 2016 and February 2019, Plaintiff was treated by psychiatrist Dr. Kass at CNS Clinical Research. *See generally* (Exhs. 2F, 8F, 11F, 13F, 15F, 17F, 19F) (R. 298-323, 466-67, 482-83, 486-88, 493-95, 508-19, 539). Relevant to Plaintiff's Motion, Dr. Kass completed a Mental Status Report in October 2017 (the "2017 MSR") and a Mental Impairment Questionnaire in January 2019 (the "2019 MIQ"). *See generally* (Exhs. 13F, 17F) (R. 486-88, 508-19).

In the 2017 MSR, Dr. Kass opined that Plaintiff was not capable of sustaining work activity for eight hours because her impaired concentration, anxiety and panic symptoms limited her ability

---

[5] This disabling hypothetical is based on the opinions of Plaintiff's treating psychiatrist (Dr. Ethan Kass) and one-time psychological examiner (Dr. Randy Levine). *See* (Exhs. 13F, 17F, 18F).

[6] The undersigned has reviewed the complete medical record. Very little of this record, however, pertains to the dispositive issue on appeal regarding the ALJ's assessment of the opinions of Drs. Kass and Levine. Accordingly, it is unnecessary to repeat the full medical history except as relevant to the determinative issue. For completeness, the record includes medical treatment by Drs. Benjamin Graber (from approximately July 2015 to November 2018 for gynecological treatment) (Exh. 20F), George W. Barnhill (from approximately January 2016 to April 2017 for psychotherapy) (Exhs. 3F, 9F), and Chhatrapal Thakur (from approximately February 2016 to January 2019 for primary care) (Exhs. 1F, 6F, 7F, 10F, 16F).

to maintain persistence and social functioning. (R. 488). In the 2019 MIQ, Dr. Kass concluded that Plaintiff would be absent from work more than four times each month because of her impairments. (R. 512).

*Dr. Randy Levine (January 2019)*

On January 26, 2019, Plaintiff underwent an 8-hour one-time consultative psychological examination with clinical psychologist Dr. Levine, who subsequently completed a Psychological Evaluation Report in February 2019 (the "2019 Report"). (Exh. 18F) (R. 521-38). Dr. Levine concluded that Plaintiff was unable to complete a full eight-hour workday due to her overall impairments and her "need to rest" to deal with her depression and insomnia. *Id.*

## IV.    THE ALJ'S DECISION

After reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act, from November 1, 2015, through the date of this decision." (R. 18).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 1, 2015, the alleged onset date. (R. 19).

At Step 2, the ALJ found that Plaintiff's generalized anxiety disorder and major depressive disorder were severe impairments. (R. 20).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Listings. (R. 20-22).

At Step 4, the ALJ determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, except Plaintiff was limited: (i) in her ability to concentrate and persist to simple tasks; (ii) could adapt to only gradual changes in the work setting; and (iii) was unable to meet fast paced, high production demands. (R. 23). The ALJ determined

that Plaintiff was not able to perform any of her past relevant work and proceeded to Step 5. (R. 28).

At Step 5, the ALJ found that there were other jobs in the national economy that Plaintiff could perform, such as laundry worker, packer, and patient transporter (all unskilled, medium occupations). (R. 28-29). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (R. 29).

## V.    DISCUSSION

Plaintiff raises three primary arguments on appeal. *See generally* (ECF No. 13). First, Plaintiff argues that the ALJ improperly discounted the opinions of the treating psychiatrist (Dr. Kass) and consultative examiner (Dr. Levine). *Id.* at 16-19. Next, Plaintiff argues that the ALJ's RFC determination was flawed because the ALJ did not consider the fluctuating nature of Plaintiff's psychological impairments, which sometimes incapacitated Plaintiff and required her to take unscheduled breaks and rest during the day. *Id.* at 19-20. Lastly, Plaintiff argues that the ALJ improperly discounted Plaintiff's credibility. *Id.* at 20-21.

For the reasons discussed below, the undersigned recommends that the ALJ's Decision be reversed and remanded on the first issue, which, in turn, may require the ALJ to reconsider her RFC and credibility determinations.

### A.    Standards in Evaluating Medical Opinion Evidence

Plaintiff argues that the ALJ failed to accord proper weight to the opinions of her treating psychiatrist (Dr. Kass) and one-time examining psychologist (Dr. Levine). (ECF No. 13 at 16-19). According to Plaintiff, "the medical opinions [of] Dr. Kass and Dr. Levine should have been accorded weight and adopted." *Id.* at 16. To be clear, the ALJ assigned "little weight" to both doctors' opinions. *See* (R. 27). Accordingly, the undersigned construes Plaintiff's argument to be that the ALJ should have afforded greater or controlling weight to these opinions.

In determining whether a claimant is disabled, Social Security regulations require the ALJ to consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). In doing so, the ALJ is required to consider certain factors, including: (i) whether the claimant has an examining or treating relationship with the medical source; (ii) the medical source's area of specialization; (iii) whether the medical source's opinion is well-supported; and (iv) whether the opinion is consistent with the record as a whole. *Id.* An ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so. *Baez v. Colvin*, No. 14-CV-21862, 2016 WL 11110181, at *7 (S.D. Fla. Mar. 2, 2016) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

In this regard, the opinion of a treating physician[7] must be given substantial or considerable weight unless the ALJ articulates good cause[8] for discounting it. *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Phillips*, 357 F.3d at 1240-41.

---

[7] A "treating source" is the claimant's own medical source who has provided the claimant with medical treatment or evaluation, and who has had "an ongoing relationship" with the claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An "ongoing relationship" generally means the claimant sees, or has seen, the physician or psychologist "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* A medical source who has "treated or evaluated [the claimant] only a few times or only after long intervals (*e.g.*, twice a year)" may be considered a treating source "if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition." *Id.* Conversely, a medical source is *not* a treating source if the relationship "is not based on [the claimant's] need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [the claim] for disability." *Id.* Notably, because Plaintiff's application was filed before March 27, 2017, the "treating source" rule then in effect required the ALJ to give great or controlling weight to Dr. Kass' opinion, unless the ALJ articulated "good cause" for discounting it. *See* 20 C.F.R. §§ 404.1527, 416.927.

[8] "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

Unlike a treating source opinion, however, the opinion of a one-time examiner "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962) (11th Cir. 1985); *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014); *see also Denomme v. Comm'r, Soc. Sec. Admin.,* 518 F. App'x 875, 877 (11th Cir. 2013). Moreover, the ALJ is not required to articulate "good cause" for discounting or rejecting a one-time examiner's opinion. *See Eyre*, 586 F. App'x at 523 (holding that ALJ does not have to defer to opinion of doctor who conducted single examination and who was not treating source); *Denomme,* 518 F. App'x at 877 (same); *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (same).

### B. The ALJ Failed to Articulate "Good Cause" for Discounting Dr. Kass' Opinion

As noted previously, Dr. Kass was Plaintiff's treating psychologist from February 2016 through February 2019.[9] (R. 298-323, 466-67, 482-83, 493-95, 539). The opinion of a treating physician, such as Dr. Kass, must be given substantial or considerable weight unless the ALJ articulates good cause for discounting it. *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440; *Phillips*, 357 F.3d at 1240-41.

---

[9] The record also includes several treatment notes from Plaintiff's visits to Dr. Kass in 2009 and 2010: (R. 322) (9/3/09 treatment note); (R. 321) (10/14/09 treatment note); (R. 320) (1/15/10 treatment note); (R. 319) (4/19/10 treatment note); (R. 318) (7/16/10 treatment note); and (R. 317) (7/23/10 phone message). However, these contacts substantially predate Plaintiff's alleged onset date in November 2015.

11

Plaintiff argues that the ALJ erred in assigning "little weight" to Dr. Kass' 2017 MSR and the 2019 MIQ. (ECF No. 13 at 16-19); *see* (R. 486-88, 508-19, respectively). According to Plaintiff, Dr. Kass' opinions merited greater weight because: (i) Dr. Kass is a treating source with a longitudinal relationship with Plaintiff (ECF No. 13 at 16, 18); and (ii) Dr. Kass' opinions are consistent with and supported by his treatment notes. *Id.* Each opinion is discussed below.

*The 2017 MSR*

In the 2017 MSR, Dr. Kass noted that: (i) Plaintiff's thought process was coherent; (ii) Plaintiff had no delusions or hallucinations, and was not suicidal; (iii) Plaintiff's memory was grossly intact; (iii) Plaintiff was fully oriented as to person, place and time; (iv) Plaintiff was able to manage her own funds; and (v) Plaintiff could perform basic activities of daily living. (R. 487-88). On the other hand, the 2017 MSR also reflected that Plaintiff's: (i) mood was depressed and anxious (*i.e.*, Plaintiff appeared mildly restless, slow, with a sad expression, but was cooperative); (ii) affect was dull; (iii) concentration was poor; (iv) appearance was disheveled; and (v) ability to sustain persistence and social interaction were impaired by her anxiety and panic. (R. 486-88). Dr. Kass diagnosed Plaintiff with major depression (recurrent, severe) and panic disorder. (R. 487). Dr. Kass concluded that Plaintiff was incapable of sustaining work activity for 8-hours a day, five days a week as a result of her "impaired concentration (due to depression) and anxiety/panic symptoms[,] [which] impair [her] ability to sustain persistence and social interactions." (R. 488).

*The 2019 MIQ*

In the 2019 MIQ, Dr. Kass again diagnosed Plaintiff with major depression (recurrent, severe) and panic disorder. (R. 508). Among Plaintiff's symptoms, Dr. Kass noted: (i) mood disturbance and social withdrawal/isolation; (ii) recurring panic attacks; (iii) anhedonia or pervasive loss of interest; (iv) difficulty thinking and concentrating; (v) decreased energy; and

(vi) generalized, persistent anxiety. (R. 509-10). When asked to describe the clinical findings that supported the severity of Plaintiff's mental impairment and symptoms, Dr. Kass wrote: "Patient has tired and anxious affect. Patient has depressed mood and decreased concentration and poor tolerability." (R. 510). Dr. Kass noted that Plaintiff was not a malingerer and opined that Plaintiff has "at most modest improvement with medication management and psychotherapy," and her prognosis was "guarded." (R. 510, 511). According to Dr. Kass, Plaintiff had poor concentration secondary to her depression and would be absent from work more than four times per month because of her impairments. (R. 512, 516).

In addition, Dr. Kass opined that Plaintiff had "poor" ability to do the following work-related activities on a day-to-day basis in a regular work setting: (i) remember work-like procedures; (ii) maintain attention and concentration for two hour segments; (iii) maintain regular attendance and be punctual; (iv) sustain an ordinary routine without special supervision; (v) work in coordination with or proximity to others without being unduly distracted; (vi) make simple work related decisions; (vii) complete a normal workday and workweek without interruptions from psychologically based symptoms; (viii) perform at a consistent pace without unreasonable rest periods; (ix) deal with normal work stress; (x) carry out detailed instructions; (xi) deal with stress of semiskilled and skilled work; (xii) interact appropriately with the general public; (xiii) maintain socially appropriate behavior; and (xiv) travel in unfamiliar places. (R. 513-17).

Dr. Kass further opined that Plaintiff had "marked" limitations in her activities of daily living and in maintaining social functioning; "frequent" deficiencies of concentration, persistence, or pace; and "repeated" episodes of deterioration or decompensation in a work-like setting. (R. 517-18). According to Dr. Kass, Plaintiff had "fair" ability to: (i) understand, remember, and carry out very short and simple instructions; (ii) understand and remember detailed instructions; (iii) ask simple questions or request assistance; (iv) accept instructions and respond appropriately

13

to criticism from supervisors; (v) get along with co-workers and peers without unduly distracting them; (vi) respond appropriately to changes in a routine work setting; (vii) be aware of normal hazards and take appropriate precautions; (viii) set realistic goals or make plans independently of others; (ix) adhere to basic standards of neatness and cleanliness; and (x) use public transportation. R. 513-17.

*The ALJ's Decision*

The ALJ accorded "little weight" to the 2017 MSR and the 2019 MIQ.  (R. 27).  In so doing, the ALJ stated:

> As for the opinion evidence, [the] undersigned . . . [has] considered the opinions of Dr. Kass, the claimant's acceptable medical source at Exhibits 13F and 17F, but [has] given the opinions little weight as the opinions are not "well supported" by the medical acceptable clinical findings and lab diagnostic techniques, are "inconsistent" with other substantial medical evidence of record[,] and are conclusory and inconsistent with the source[']s own treatment notes.

(R. 27).

Plaintiff does not explicitly argue that the ALJ failed to articulate "good cause" for assigning "little weight" to Dr. Kass' opinions.  *See* (ECF No. 13 at 17-19).  Instead, Plaintiff disagrees with the ALJ's evaluation of the factors used for considering medical evidence.[10]  *Id.* at 18; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Here, however, the ALJ's error is far graver than simply failing to discuss the regulatory factors for evaluating medical opinions.  Rather, the ALJ's error is a fundamental one.  As discussed below, the ALJ's cursory evaluation and analysis of Dr. Kass' opinions, coupled with her failure to articulate the basis underlying her decision to discount the opinions, makes it impossible for the undersigned to determine whether substantial evidence supports the ALJ's Decision and whether the proper legal standards were applied.

---

[10] Notably, the regulations do not require the ALJ to explicitly address each factor.  *See Brock v. Comm'r, Soc. Sec. Admin.,* 758 F. App'x 745, 751 (11th Cir. 2018); *Lawton v. Comm'r of Soc. Sec.,* 431 F. App'x 830, 833 (11th Cir. 2018).

To begin with, the ALJ condenses more than two-years of treatment notes by Dr. Kass into two sentences. The ALJ wrote:

> Treatment records from CNS Clinical Research [Dr. Kass] dated from February 3, 2016 through December 17, 2018, noted the claimant underwent follow up for concerns including[] panic attacks, depression, excessive sleep, decreased energy, concentration, motivation and frustration tolerance. Mental status examinations during this period noted the claimant as calm and appropriate with from dull/depressed/anxious to full range affect, normal speech and coherent thought processes (Exhibits 2F, 8F, 11F, 15F).

(R. 24).

This two-sentence abstract does not even remotely reflect the ups and downs of Plaintiff's symptoms and Dr. Kass' impressions of Plaintiff's impairments throughout her course of treatment. As written, this cryptic summary also sheds no light on what portion of Dr. Kass' treatment notes the ALJ finds "inconsistent" with the 2017 MSR and 2019 MIQ. The ALJ's standalone statement that Dr. Kass' treatment notes are inconsistent with the MSR and MIQ, without pointing to *any* of the purportedly contradicting or inconsistent treatment notes or other record evidence, does not make it so. Rather, "to discount a treating physician's opinion because it is 'inconsistent with [the source's] own medical records' an ALJ must identify a 'genuine' inconsistency." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019); *Simon v. Comm'r, Social Sec. Admin.*, 1 F.4th 908, 921 (11th Cir. 2021) (citing *Lewis*, 125 F.3d at 1440).

Similarly, the ALJ states that Dr. Kass' "opinions are not 'well supported' by the medical acceptable clinical findings and lab diagnostic techniques," but fails to articulate why or how it is that Dr. Kass' opinions are not "well supported" or attempt to identify the purported findings and techniques that contradict the opinions. While it is true that the ALJ is not required to recite every piece of evidence, *see, e.g., Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 969 (11th Cir. 2015), the ALJ must provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x

15

890, 891-92 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005)). That is a fatal flaw here. The ALJ simply "did not adequately explain how any of these pieces of evidence were inconsistent with [the treating source] opinions or otherwise constituted good cause to disregard [the doctor's] conclusions." *Simon*, 1 F.4th at 918 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Lastly, although the ALJ reviewed some of the medical records, including treatment notes from Drs. Kass, Graber (Exh. R. 20F) and Barnhill (Exs. 3F, 9F), the ALJ's truncated extract from these records is insufficient for the undersigned to determine whether substantial evidence supports the ALJ's Decision.[11] *See* (R. 24). Without an understanding of the ALJ's reasoning, and at least *some* explanation of what and how the opinions are unsupported by or inconsistent with the record, the undersigned would be forced to supplant its judgment for that of the ALJ and reweigh the evidence. *Winschel,* 631 F.3d at 1178 (noting that it is not for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."). The undersigned will not affirm "simply because some rationale might have supported the ALJ's conclusions." *Id.* at 1179 (noting that "[i]n such a situation, 'to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'") (citation omitted). It is the "responsibility of the agency, not the reviewing court, to supply the justification for its decision and to sufficiently explain 'the weight [it] has given to obviously probative exhibits.'" *Simon*, 1 F.4th at 918 (citing *Cowart*, 662 F.2d at 735; *see also Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Failure to apply the correct legal standards or to provide the reviewing

---

[11] Relatedly, the ALJ's Decision did not discuss any treatment notes from Plaintiff's primary care provider, Dr. Thakur, who treated Plaintiff from approximately February 2016 to January 2019. (Exhs. 1F, 6F, 7F, 10F, 16F).

court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal."). Accordingly, the ALJ's Decision should be reversed so that the ALJ may more fully articulate "good cause" for discounting the treating source opinion.[12]

### C. The ALJ Should Reassess Dr. Levine's Opinion

In January 2019, Plaintiff underwent a one-time consultative psychological examination with clinical psychologist Dr. Levine, who then completed a Psychological Evaluation Report. (R. 521-38) (Exh. 18F).

Unlike a treating source opinion, the opinion of a one-time examiner, like Dr. Levine, "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle*, 914 F.2d at 226 n.3 (citing *Broughton*, 776 F.2d at 962); *see also Eyre,* 586 F. App'x at 523; *Denomme,* 518 F. App'x at 877. Moreover, the ALJ is not required to articulate "good cause" for discounting or rejecting Dr. Levine's opinion. *See Eyre*, 586 F. App'x at 523 (holding that ALJ does not have to defer to opinion of doctor who conducted single examination and who was not treating source); *Denomme,* 518 F. App'x at 877 (same); *McSwain,* 814 F.2d at 619 (same). Nonetheless, because the ALJ's assessment of Dr. Levine's opinion suffers from the same core deficiency as that of Dr. Kass, the ALJ is encouraged to review her findings upon remand. For example, the ALJ explained her decision to give "little weight" to Dr. Levine's 2019 MIQ using the same unsupported language as used for Dr. Kass' opinions:

---

[12] To be clear, an ALJ is free to discount any opinion, even that of a treating physician, as long as she clearly articulates her reasons. *See, e.g.*, *Maddaloni v. Saul*, No. 18-CV-60928, 2021 WL 1062288 (S.D. Fla. Mar. 19, 2021) (reversing decision that failed to articulate ALJ's reasoning for discounting treating source opinion); *Berg v. Saul*, No. 19-CV-60521, 2020 WL 1237044, at *8 (S.D. Fla. Feb. 27, 2020), *report and recommendation adopted,* No. 19-CV-60521, 2020 WL 1235998 (S.D. Fla. Mar. 13, 2020) ("When an ALJ does not give controlling weight to a treating source's opinion, the ALJ must clearly articulate "good cause" for discounting it."); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("The law is clear that ... the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.") (citation omitted).

> The undersigned . . . has also considered the opinion of Dr. Levine, examining medical consultant at Exhibit 18F, but given the opinion little weight as the opinion is not "well-supported" by the medical acceptable clinical findings and lab diagnostic techniques, [is] "inconsistent" with other substantial evidence of record, and [is] conclusory and inconsistent with the medical consultant[s'] own findings on examination.

(R. 27).

Notably, the ALJ made no reference to the different legal standard for evaluating the opinion of a consultative examiner. Although that standard may favor the ALJ's weight determination, the ALJ's rationale here is so conclusory that it is unclear whether the ALJ's Decision is supported by substantial evidence and whether the ALJ applied the proper legal standards. *Winschel,* 631 F.3d at 1178 (noting that it is not for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."); *Wiggins*, 679 F.2d at 1389 ("Failure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal.").

### D.     The ALJ's RFC and Credibility Determinations

Next, Plaintiff argues that the ALJ's RFC determination is flawed because the ALJ did "not take into account the waxing and waning nature of the [C]laimant's impairments, specifically that [Claimant] is completely incapacitated during times of panic attacks and that complaints of fatigue, dizziness, and pain require her to take unscheduled breaks and rest up to [three] hours per day." (ECF No. 13 at 19). Lastly, Plaintiff argues that the ALJ's "credibility determination is not supported by substantial evidence." *Id.* at 20-21. The undersigned, however, need not address these arguments because they depend, at least in part, on the ALJ's evaluations of the medical opinions for which the undersigned has already recommended that remand is appropriate. *Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841, 849 (11th Cir. 2016).

## VI.  RECOMMENDATION

Because the ALJ's Decision does not contain sufficient basis for this Court to determine whether "good cause" exists for the ALJ's Decision to give "little weight" to the medical opinions of Plaintiff's treating physician, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 13) be **GRANTED,** that Defendant's Motion for Summary Judgment (ECF No. 15) be **DENIED,** and that the ALJ's Decision be **REVERSED AND REMANDED** for the reasons set forth above.  In so doing, the undersigned expresses no opinion regarding Plaintiff's eligibility for benefits on remand.

Within **seven (7)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on August 10, 2021.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
   All Counsel of Record